**UNITED STATES of America, Appellee,**

v.

**Joseph Michael RICE, Jr., Appellant.**

**No. 80–1679.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 7, 1981.

Decided May 18, 1981.

Thomas R. Sheridan, Simon & Sheridan, Los Angeles, Cal., for appellant.

Theresa Kristovich, Los Angeles, Cal., argued for appellee; Robert Biniaz, Asst. U.S. Atty., Los Angeles, Cal., on brief.

Before CHOY and NELSON, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, District Judge:

Joseph Michael Rice, Jr., was convicted on three counts of receiving money or profits through transactions of Allstate Savings and Loan Association (Allstate) with the intent to defraud Allstate. 18 U.S.C. § 1006 (Section 1006).[1] He appeals and we affirm.

Rice worked as a consultant for Allstate from May, 1976 until June, 1978. His written contract with Allstate provided that he would work exclusively for Allstate to originate first mortgage loans on one to four units of existing residential property. Allstate assigned Rice to a specific area; commissions based on the dollar volume of loans he originated were to be his sole compensation. Allstate reserved the right to decide whether to make a loan.

Rice contends that in 1977, he began "working for borrowers to make complex deals lendable" and that he charged the borrowers a fee of 1½% of the loan principal for his extra work.

In August, 1977, Neil Hagerty approached Rice to get Allstate to finance the sale of four condominiums. Rice advised Hagerty to sell each condominium to an individual who would finance the purchase through Allstate and demanded an up-front payment of 1½% of the requested loan principal to "Alltrust." Rice told Hagerty that Alltrust was a division of Allstate Insurance Company and that Alltrust received much of its funds through the insurance company. At Rice's insistence, Hagerty paid the fee with an Allstate cashier's check so that it would be easier to cash.

A few months later, Hagerty approached Rice to get Allstate to finance the construction of an eight-unit condominium project. Rice told Hagerty that the loan could be made but he again required an up-front fee of 1½%.

In the fall of 1977, Joel Berlinsky, a real estate broker, approached Rice to obtain financing for his client from Allstate to purchase a triplex. The transaction consisted of three separate loans with a fee of 1½ points payable to Allstate. Later, Rice told Berlinsky that there would be an extra

---

* Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. This section provides, in pertinent part: "Whoever, being an officer, agent or employee of or connected in any capacity with ... any institution the accounts of which are insured by the Federal Savings and Loan Corporation ... with intent to defraud any such institution ... participates or shares in or receives directly or indirectly any money, profit, property, or benefits through any transaction, loan, commission, contract, or any other act of any such ... institution, or association, shall be fined not more than $10,000 or imprisoned not more than five years or both."

finance charge of 1½% payable to "Alltrust Department." Berlinsky assumed that Alltrust was affiliated with Allstate. Berlinsky paid the fee but because the loan was never consummated, Rice repaid the finance charge.

In July, 1980, Rice was indicted for the violation of Section 1006.

Rice filed a motion to dismiss in which he challenged the applicability of Section 1006. The district court denied the motion. After a trial, the jury returned a verdict of guilty on all counts.

■ In this appeal, Rice contends that the district court erred in interpreting Section 1006 to include him as "connected in any capacity with" Allstate. Rice argues that Section 1006 is a typical conflict of interest statute and he could have no conflict of interest because he had no right to approve loans.

This phrase is neither defined by statute nor has any court interpreted it. All of the cases decided under the statute have involved officers and employees or their aiders and abettors.

Rice urges us to seek guidance in interpretation from Federal Home Loan Bank Board regulations which he contends would not prohibit his behavior. We rejected this argument in *United States v. Chenaur*, 552 F.2d 294 (9th Cir. 1977):

> Frankly, we fail to see what Federal Home Loan Bank Board policy has to do with a crime charged under 18 U.S.C. § 1006. Either a crime has been committed under § 1006 or it has not regardless of Federal Home Loan Bank Board policy.

*Id.* at 298 n. 5.

Rice also refers us to California statutes which prohibit an association's officers and directors from receiving loan procurement fees but permit agents and consultants to receive them. Rice was indicted under federal law and California law is irrelevant.

Because the federal government is extensively involved in the financial markets, Section 1006 was enacted not only to ensure that policy makers will not be influenced by their personal interests but also to keep federally insured lenders free from fraud. *See Beaudine v. United States*, 368 F.2d 417 (5th Cir. 1966). We construe the statute broadly and hold that Rice was "connected in any capacity with" Allstate.

Rice concedes all the elements of Section 1006, except the intent to defraud. He contends that the district court severely restricted his cross and direct examination and that he could not effectively present testimony and documentary evidence on the issue of intent.

■ We have examined the record and find no error. Many of the questions which Rice contends were improperly rejected had already been asked by his counsel and the other questions were irrelevant.

■ Rice complains that the district court unduly restricted his testimony on what Hagerty and Berlinsky said when he told them about the extra fee. We think the rulings were correct, but even if there was error, the error was harmless.

■ Rice testified that he told Hagerty and Berlinsky that an additional fee of 1½% would be required because the deals were large and complicated. He admitted that he did not tell them that the fee was for himself or that the work was beyond the scope of his duties for Allstate. Rice demanded payment to "Alltrust," a fictitious entity that he had invented and Rice refused a check from Berlinsky's client payable to "Allstate Trust Department" because he would have been unable to cash it.

There was ample evidence from Rice's own testimony to find that he intentionally deceived the borrowers and that his defense was not limited by the court's restrictions.

■ Rice contends that Allstate was not defrauded because it suffered no financial loss as a result of his actions. We rejected a similar argument in *United States v. Chenaur, supra*, when we held that the financial institution need not suffer an economic loss to find a violation of Section 1006. We quoted with approval the following statement from *Beaudine v. United States, supra*:

> The fraud commences with the deceit . . .
> When there is the purpose to deceive, it

matters not whether the objective is to obtain an advantage or to cause the principal to suffer a loss. Either in effect completed the fraudulent purpose.

*United States v. Chenaur, supra* at 299.

Here, Rice did not report the fees to Allstate and his supervisor had no knowledge of Rice's activities. He kept the fees from Hagerty and he had the use of the funds from the Berlinsky transaction for six months. Rice profited from all three transactions.

■ The district court imposed consecutive three-year sentences on each count with all but the first six months suspended. The district court also placed Rice on probation for five years on the condition that he devote 1,500 hours to community service. This results in one and one-half years of incarceration, fifteen years of probation and 4,500 hours of community service. This is an improper sentence under 18 U.S.C. § 3651.

The convictions are affirmed but the case is remanded to the district court for correction of the sentence.