**UNITED STATES of America, Appellee,**

v.

**Frederick Charles BOLSTAD, Jr., Appellant.**

No. 92–3725.

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1993.

Decided July 12, 1993.

Virginia Villa, Minneapolis, MN, Katherian D. Roe, (on the brief), for appellant.

James E. Lackner, Minneapolis, MN, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, LAY, Senior Circuit Judge, and FAGG, Circuit Judge.

PER CURIAM.

Frederick Charles Bolstad, Jr., appeals his jury convictions for misapplication of savings and loan funds and fraudulent participation in a loan in violation of 18 U.S.C. § 657 and § 1006. We affirm.

Bolstad was the president of Midwest Federal Mortgage Corporation (MFM), a wholly owned subsidiary of Midwest Federal Savings and Loan (MFS & L). Bolstad was responsible for originating commercial real estate loans, gathering the documentation, and presenting the documents to MFS & L for approval. Unknown to MFS & L, Bolstad was also a partner of CDR/Minnesota, a real estate development company. One of Bolstad's responsibilities for CDR/Minnesota was to obtain financing for its development projects.

In 1985, CDR/Minnesota agreed to purchase some real estate. Bolstad structured the purchase as a two-part transaction: another company, which acted on CDR/Minnesota's behalf, purchased the real estate for $1.086 million and resold it to CDR/Minnesota on the same day for $1.327 million. Both CDR/Minnesota and the other company knew the second purchase was false because CDR/Minnesota was essentially buying the real estate from itself. To finance the purchase and development of the real estate, CDR/Minnesota applied to MFM for a loan. Bolstad represented MFM on this loan and told MFS & L the real estate cost CDR/Minnesota $1.327 million. MFS & L approved a loan with terms requiring CDR/Minnesota to use the money to purchase and develop the real estate. CDR/Minnesota, however, distributed the difference between the false and actual purchase prices from the loan money among its partners and the other company as profit on the transaction.

■ Bolstad contends he was not sufficiently related to MFS & L to fall under § 657 or § 1006, which apply to anyone "connected in any capacity with" a savings and loan, because MFM and MFS & L's operations were separate and he did not have authority to approve the loan. We disagree. Bolstad was the president of MFS & L's wholly owned subsidiary and was responsible for preparing and presenting loan documents to MFS & L. Thus, under the broad language of § 657 and § 1006, Bolstad was clearly connected with MFS & L. *See United States v. Coney,* 949 F.2d 966, 967 (8th Cir.1991) (employee of contractor was "connected with" the financial institution under a related statute); *United States v. Prater,* 805 F.2d 1441, 1446 (11th Cir.1986) (subsidiary president who recommended loans was "connected with" the financial institution); *United States v. Rice,* 645 F.2d 691, 692–93 (9th Cir.) (consultant without authority to approve loans was "connected with" the financial institution), *cert. denied,* 454 U.S. 862, 102 S.Ct. 318, 70 L.Ed.2d 160 (1981).

■ Bolstad next contends the evidence was insufficient to show he intended to defraud MFS & L. We disagree. Viewing the evidence in the light most favorable to the government, *United States v. Thompson,* 972 F.2d 201, 203 (8th Cir.1992), we conclude the record contains overwhelming evidence of Bolstad's guilty intent. Knowing the loan proceeds could only be used for buying and developing the real estate, Bolstad structured the two-part transaction to increase artificially the real estate's purchase price. Bolstad lied to MFS & L about the real estate's actual price, and he did not tell MFS & L that he was a partner of CDR/Minnesota or that he received part of the loan proceeds for his personal use.

■ Bolstad also contends the district court improperly gave the jury a willful blindness instruction. Bolstad contends the instruction allowed the jury to convict him without an adequate finding of specific intent. We disagree. The instruction applied to another defendant. Even if the instruction were erroneously given, we conclude the error was harmless. Bolstad did not ask the district court to limit the instruction to the other defendant, the Government never asserted the willful blindness instruction applied to Bolstad during its closing argument, and the evidence of Bolstad's criminal intent was overwhelming. *See United States v. Regan,* 940 F.2d 1134, 1136 (8th Cir.1991).

Accordingly, we affirm.