**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 95-3235MN

_____

United States of America,       *
                                *
          Appellee,             *
                                *
     v.                         *
                                *
Joan M. Noske,                     *
                                *
          Appellant.            *

          _____        Appeals  from  the  United
States

                                  District  Court  for  the
District of
          No. 95-3254MN           Minnesota.

          _____

United States of America,       *
                                *
          Appellee,             *
                                *
     v.                         *
                                *
James L. Noske,                    *
                                *
          Appellant.            *


          _____

          No. 96-1997MN

          _____

United States of America,       *

```
                                    *
            Appellee,              *
                                    *
     v.                             *
                                    *
James L. Noske,                         *
                                    *
            Appellant.             *


            _____

            No. 96-1999MN
            _____


United States of America,     *
                                    *
            Appellee,             *
                                    *
     v.                             *
                                    *
Joan M. Noske,                          *
                                    *
            Appellant.            *


            _____

            No. 96-2001MN
            _____


United States of America,     *
                                    *
            Appellee,             *
                                    *
     v.                             *
                                    *
John B. Ellering,                       *
                                    *
```

                    Appellant.        *


                    _____

                    No. 96-2004MN
                    _____


United States of America,      *
                               *
            Appellee,          *
                               *
       v.                      *
                               *
Imelda M. Spaeth,                    *
                               *
            Appellant.         *


                    _____

                    No. 96-2006MN
                    _____


United States of America,      *
                               *
            Appellee,          *
                               *
       v.                      *
                               *
Laverne Scherping,             *
                               *
            Appellant.         *


                    _____

                    No. 96-2008MN
                    _____


                         -3-

United States of America,    *
                             *
          Appellee,          *
                             *
     v.                      *
                             *
Loren Scherping,                  *
                             *
          Appellant.         *
                   _____


                         Submitted:   February 10,
1997

                              Filed:      June
24, 1997
                   _____

Before McMILLIAN, BEAM, and FAGG, Circuit Judges.
                   _____


FAGG, Circuit Judge


     James L. Noske, a law school graduate and financial planner, and his sister, Joan M. Noske, an accountant and tax return preparer, sold services promoting the use of business trusts and supposedly tax-exempt corporations to help many individuals hide income and assets from the Internal Revenue Service (IRS).  Basically, the Noskes helped their clients facing tax assessments transfer assets to one of the Noskes' "nonprofit" corporations in a "sale" for no consideration.  The transfer made it appear as though the client no longer owned the property, preventing the IRS from levying on it to satisfy outstanding tax liabilities, but the clients continued to exercise full control over the property.  The Noskes also helped clients seeking to reduce or avoid federal income

-4-

tax form a business trust, which conducted no business activity, name the Noskes' "nonprofit" corporations as trustees, and transfer all income-producing property to the trust.  Through a contribution of trust shares to one of the purported

nonprofit corporations and other maneuvers, the arrangement effectively evaded the assessment and payment on 60% of the clients' income. With the help of Imelda M. Spaeth from the early 1980s through the early 1990s, and John B. Ellering from 1988 through 1993, the Noskes obtained third parties to sign often-blank documents as officers of the Noske corporations. Joan Noske filed income tax returns for the trusts, showing distributions to Noske corporations and the clients.

The Noskes' clients included brothers Loren and Laverne Scherping, owners and operators of a dairy farm in Minnesota. After the IRS decided the Scherpings owed a tax deficiency, the brothers purported to convey their farm to a trust formed with the help of the Noskes, naming Noske corporations as trustees. The Scherpings also transferred all their farm personal property, including equipment and livestock, to a Noske corporation. The Scherpings retained full control over their farm, however. When the Tax Court decided the income earned from the farm was taxable to the Scherpings individually rather than the Noske corporation, Joan Noske helped the Scherpings sell the cattle to avoid an IRS levy. In cashing the cattle purchasers' checks, Joan Noske deliberately evaded requirements that banks report currency transactions over $10,000 by breaking the transactions down into smaller amounts.

For their parts in the scheme, the Noskes, Spaeth, and Ellering were charged in Count I of the indictment with conspiracy to defraud the United States by impeding the IRS. The Government also charged the Noskes and the Scherpings with conspiracy to evade income taxes assessed

against the Scherpings in Count II of the indictment, and with income tax evasion in Count III.  Joan Noske and the Scherpings were also charged with several counts of structuring a monetary transaction for negotiation of the cattle proceeds.  The Noskes, Spaeth, and Ellering were convicted of all charges against them.  The Scherpings were found guilty of conspiracy to evade income taxes, but acquitted on the other charges.  The Noskes, Spaeth, Ellering, and the Scherpings appeal.  Having carefully examined their many arguments, we affirm.

The Noskes contend their prosecution on the conspiracy counts violates double jeopardy because the IRS had already imposed civil tax penalties against them for promoting abusive tax shelters. See 26 U.S.C. § 6700 (1988) (providing for penalty of $1000 or 100% of income derived from activity). The Noskes have not been punished by assessment of the § 6700 penalties, however, because the penalties are remedial rather than punitive in nature. The Noskes were jointly assessed a penalty of $490,174, representing 20% of the income derived from their abusive activity. As the district court found, this is not overwhelmingly disproportionate to the Government's damages. See United States v. Halper, 490 U.S. 435, 439 (1989) (penalty more than 220 times greater than Government's loss qualified as punishment for double jeopardy purposes). Although no final tally has been calculated, the district court found the Government had incurred "obviously substantial" costs and "significant expenses" because of the Noskes' behavior, including lost tax revenue and costs of investigation and prosecution over a ten-year period. At bottom, the penalties imposed do not exceed what could reasonably be regarded as compensation for the Government's damages. See id. "[T]he Government is entitled to rough remedial justice," id. at 446, regardless of the precise amount needed for compensation. See Thomas v. Commissioner, 62 F.3d 97, 101 (4th Cir. 1995) (§ 6653(b)(1) addition to tax not punitive in violation of double jeopardy). The district court concluded, and we agree, that the penalty serves the remedial goal of reimbursing the Government.

The Noskes also contend the Government's evidence against them included or was derived from information and records they provided to three particular IRS agents under a written immunity agreement in effect between 1983 and 1985. The district court held a five-day hearing on the immunity issue and concluded the Noskes had been granted derivative use immunity. After reviewing the 1994 indictment, the sources of information that led to the indictment, and the information provided under the grant of immunity, the district court held the Government had shown the information used to

obtain the indictment was derived from legitimate, independent sources, and the information provided by the Noskes to the three agents was not used, directly or

indirectly, in obtaining the indictment.  Having reviewed the record, including the district court's lengthy report and addenda, we conclude the district court committed no error.  See United States v. Wiley, 997 F.2d 378, 381 (8th Cir. 1993).

Next, the two conspiracy counts do not subdivide a single criminal conspiracy into multiple violations of the same offense in violation of double jeopardy.  Although the two counts charge violations of the same statute, 18 U.S.C. § 371, the totality of the circumstances reveals the counts address separate agreements.  See United States v. Okolie, 3 F.3d 287, 290-91 (8th Cir. 1993).  Count I charged the Noskes, Spaeth, and Ellering with conspiracy to defraud the United States, and the evidence showed they agreed to provide sham entities and record keeping services that permitted clients to hide their own tax liabilities.  Count II charged the Scherpings, who were not members of the Count I conspiracy, and the Noskes with conspiring to evade the payment of the Scherping's tax liabilities.  The evidence established the Scherpings were motivated to evade only their own tax liabilities, rather than to provide general tax evasion services like the Noskes, Spaeth, and Ellering.  See United States v. Rosnow, 977 F.2d 399, 405-06 (8th Cir. 1992).  In sum, the two conspiracy counts address separate agreements with separate objects among different people, not a single agreement to commit two crimes.  See United States v. Thomas, 759 F.2d 659, 662 (8th Cir. 1985).

The district court did not abuse its discretion in denying motions by Spaeth and the Scherpings for severance.  Joinder was proper under Fed. R. Crim. P. 8(a), and Spaeth and the Scherpings  have not shown actual prejudice warranting severance under Fed. R. Crim. P. 14.  See United States v. Delpit, 94 F.3d 1134, 1143 (8th Cir. 1996).  Acquittals of some defendants on some charges and a defendant charged only with count II show the jury was able to compartmentalize the evidence. See id. at 1144; United States v. Nevils, 897 F.2d 300, 305 (8th Cir. 1990).  Further, any risk of prejudice was reduced by the district court's instructions, which directed the jury to consider each offense and its supporting evidence separately, and to analyze the

evidence with respect to each individual without considering evidence admitted solely against other defendants.  See Delpit, 94 F.3d at 1144.

The district court also did not abuse its discretion in refusing to admit evidence of the Scherpings' willingness to pay what they believed was the correct amount of their income tax liabilities for 1979 through 1983.  See id. at 1146 (standard of review).  Under a Tax Court ruling, the Scherpings were legally obligated to pay a higher amount than they allegedly believed was correct.  The Scherpings' willingness to pay an amount less than they legally owed was simply irrelevant.

The district court correctly refused to suppress a list of trust documents seized during a search of John Ellering's home and bowling alley.  Even if the search violated Ellering's Fourth Amendment rights, the list was merely cumulative of other properly admitted evidence showing Ellering had knowledge of the trusts, and thus admission of the list was harmless beyond a reasonable doubt.  See United States v. Johnson, 12 F.3d 760, 765 (8th Cir. 1993).

The district court did not abuse its discretion in admitting  an exhibit showing that Spaeth had unpaid tax liabilities from 1980 and 1981, and that in Tax Court proceedings assessing the deficiencies, Spaeth had testified she had no taxable income from her job at a veterinary clinic because she had donated her services to a Noske nonprofit corporation, which allegedly performed services for the clinic under a contract.  Noting the exhibit reflected Spaeth's activities during the time frame of the charged conspiracy, the court held the evidence was relevant and admissible.  We agree.  The evidence was connected with and part of Spaeth's activities with the Noskes, see United States v. Luna, 94 F.3d 1156, 1162 (8th Cir. 1996), and was not unfairly prejudicial, see Fed. R. Evid. 403.  Even if the exhibit were considered evidence of other crimes, the exhibit was admissible to show Spaeth's knowledge of the conspiracy's object and her intent to join, and Spaeth's motion in limine shows she had reasonable notice the exhibit might be offered.  See Fed. R. Evid. 404(b).

-11-

Similarly, the district court did not abuse its discretion in excluding certain evidence James Noske sought to introduce. See Delpit, 94 F.3d at 1146. The court properly excluded evidence that IRS Special Agent Patrick Henry recommended against pursuing prosecution of the Noskes in 1988. Henry did not have the benefit of most of the evidence against the Noskes, which was gathered later, so his 1988 opinion was based on incomplete information and is irrelevant. Even if relevant, the minimum probative value of the evidence is outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury. See Fed. R. Evid. 403. As for the district court's ruling precluding James Noske from calling Agent Henry as a witness, Noske has not shown the exclusion prejudiced him.

Joan Noske challenges her convictions for structuring a transaction to evade requirements that financial institutions report the payment, receipt, or transfer of currency exceeding $10,000. See 31 U.S.C. § 5324(3) (1988) (found in 1994 version at § 5324(a)(3) without substantive change); id. § 5313(a). Viewing the evidence in the light most favorable to the verdict, see United States v. Erdman, 953 F.2d 387, 389 (8th Cir. 1992), the evidence supports Joan Noske's structuring convictions. Less than a week after the Tax Court sustained the Commissioner's determination of deficiencies in the Scherpings' tax liabilities for 1981 through 1983, the Scherpings and Joan Noske liquidated the Scherpings' herd of dairy cattle over a five-day period. In three of the sales, Joan negotiated the buyers' checks over $10,000 for currency and the purchase of money orders in amounts less than $10,000. The jury could reasonably find Joan asked the bank to break down the proceeds into cashiers' checks and cash in lesser amounts to avoid triggering the reporting requirement. The jury could also reasonably infer Joan Noske willfully violated the antistructuring statute. Ample evidence showed Joan knew of the bank's duty to report cash transactions over $10,000 and her own duty not to evade triggering a bank report, including her notification by the IRS about the reporting requirements, her status as a tax return preparer and later a certified public accountant, and the elaborate nature of the scheme. See Ratzlaf v. United States, 510 U.S. 135, 146-47, 149 n.19 (1994).

Although Joan did not trigger the reporting requirement by receiving more than $10,000 in cash on any one day, the indictment's structuring counts stated a crime. The reporting requirement need not be triggered for a person to violate § 5324(3). See United States v. Davenport, 929 F.2d 1169, 1172-73 (7th Cir. 1991). Indeed, § 5324(3) targets evasion of the reporting requirement; if the structuring is successful, the bank's duty to file a currency transaction report is not activated. See Davenport, 929 F.2d at 1172-73. Additionally, contrary to Joan's view, § 5324(3) is not void for vagueness. See id. at 1173.

The evidence was also sufficient to sustain Joan Noske's other convictions. For Joan's tax evasion conviction, the Government introduced evidence that the Scherpings owed taxes, including the Tax Court decision finding the Scherpings' sale of their farm assets to a Noske corporation was a sham for tax purposes. Joan's conviction for conspiracy to evade the Scherpings' tax liabilities is similarly supported by evidence that she and the Scherpings began to liquidate the herd of cattle that the Scherpings had "sold" to the corporation, right after the Tax Court issued its adverse decision. Likewise, the evidence was sufficient to convict Joan of conspiracy to defraud the United States. Evidence showed Joan acted to impede the IRS, and agreed with others to do so. Joan's filing of income tax returns for the trusts rather than the clients individually was part of the deception.

The evidence was also sufficient to convict Spaeth and Ellering of conspiracy to defraud the United States. Once a conspiracy is shown, only slight evidence is needed to prove a particular defendant's participation. See United States v. McCarthy, 97 F.3d 1562, 1568 (8th Cir. 1996), cert. denied, 117 S. Ct. 1011, and cert. denied, 117 S. Ct. 1284 (1997). The jury could reasonably infer Spaeth and Ellering knew of the conspiracy's object and willingly joined and participated. Spaeth and Ellering were deeply involved in the Noskes' illegal activities. The evidence showed Spaeth used a Noske entity to try to evade her own tax liabilities, acted as an officer and an incorporator of bogus Noske entities, signed numerous fake documents, and was a

signatory on a FAST trust checking account used to funnel income back to Noske clients. Similarly, Ellering put his own business into a Noske trust, acted as a trustee of Noske entities, and was also a signatory on the FAST trust checking account. In sum, ample evidence showed Spaeth and Ellering were knowingly involved in the Noskes' efforts to hide the income and assets of numerous taxpayers.

The district court's jury instructions did not improperly prejudice the appellants. The willful blindness instruction was proper at least with respect to unconvicted codefendant Dwaine Weber. See United States v. Gonzales, 90 F.3d 1363, 1371 (8th Cir. 1996). Any error in giving the instruction was harmless with respect to Joan Noske, who now challenges it. See United States v. Bolstad, 998 F.2d 597, 598 (8th Cir. 1993) (per curiam). Joan did not request that the instruction be limited to Weber, the Government did not argue it applied to her during closing argument, and evidence of Joan's actual knowledge was overwhelming.

The appellants also challenge the instruction that trust arrangements are shams for tax purposes if the trust's originator retains control over the property or income placed in the trust, and does not change the way the property or income is treated. The instruction correctly states the law, however. See Paulson v. Commissioner, 992 F.2d 789, 790 (8th Cir. 1993) (per curiam). Whether the trusts were taxable as trusts or as corporations, the jury was properly instructed to decide if the trusts were economically viable entities or existed merely to facilitate the Noske tax evasion scheme.

James Noske also argues the district court should have included the exhibit numbers in an instruction that directed the jury not to consider Revenue Officer Cleland's testimony or any exhibits introduced through him in considering the case against the Noskes. Any error was harmless, however, because James provided the restricted exhibit numbers to the jury during closing arguments, without Government contradiction. As for the instruction charging that a transaction lacking economic substance is not recognized for tax purposes, any error was harmless because, reading

the instructions as a whole, the jury was free to find a transaction lacking economic substance was not entered into with intent to impede the IRS.  James Noske was not entitled to an instruction on entrapment by estoppel because the evidence did not support the defense.  See United States v. Achter, 52 F.3d 753, 755 (8th Cir. 1995); United States v. Austin, 915 F.2d 363, 365 (8th Cir. 1990).  Although James contends the district court committed error in refusing to give a series of other requested instructions, he does not explain why the instructions given instead were wrong.

Last, the district court committed no errors in sentencing James and Joan Noske. James contends the district committed error in adopting the presentence report (PSR) without conducting an evidentiary hearing.  In response to James's lengthy objection to the PSR, the district court made detailed findings of fact addressing his objections, and noted that it had presided at the trial and had heard all the evidence.  James was not entitled to an evidentiary hearing because the district court could properly base its sentencing findings on evidence and testimony from the trial.  See Delpit, 94 F.3d at 1154.

Turning to the substantive attacks on their sentences, the Noskes first challenge the district court's calculation of tax loss in deciding their base offense levels.  After holding an evidentiary hearing on the calculation of monetary loss, the district court adopted the amount specified in the PSR.  Having carefully reviewed the matter, we conclude the district court correctly calculated the amount of tax loss.  As loss resulting from the Count I conspiracy, the district court properly used 28% of the untaxed distributions to a Noske "nonprofit" corporation, which should have been paid as the distributors' personal income tax.  The Government was not required to prove it actually lost that amount in taxes.   See U.S. Sentencing Guidelines Manual § 2T1.1(a)(B) (1992)  ("U.S.S.G."); id. § 2T1.3(a) (tax loss equals 28% of gross income).  The record shows the distributors were not entitled to charitable deductions for the sham distributions.   The district court also properly included for uncharged relevant criminal conduct the amounts of tax, computed from IRS files, evaded by

clients other than the Scherpings by using the Noskes' business trust scheme.  See United States v. Meek, 998 F.2d 776, 781-82 (10th Cir. 1993).

The district court was also right in adding two levels to the base offense level for the Noskes' use of sophisticated means.  See U.S.S.G. § 2T1.1(b)(2); id. n.6; United States v. Lewis, 93 F.3d 1075, 1080-82 (2d Cir. 1996).  The district court made no mistake in adding two more levels to Joan Noske's base offense level under U.S.S.G. § 3B1.3 for her abuse of a position of trust.  The addition applies because of Joan's position as a financial planning adviser and tax preparer, even though she did not become a CPA until 1988.  See United States v. Tardiff, 969 F.2d 1283, 1289-90 (1st Cir. 1992).

James Noske's grouping argument fails because his 96-month sentence does not exceed the total statutory maximum of 15 years.  Likewise, his attack on his criminal history category is refuted by the plain language of the applicable guideline commentary.  See U.S.S.G. § 4A1.2 n.1.  Finally, the Noskes were properly assessed the costs of prosecution for tax evasion as 26 U.S.C. § 7201 requires.  See United States v. Wyman, 724 F.2d 684, 688 (8th Cir. 1984).

We have carefully considered all of the appellants' contentions, including those raised in their pro se briefs and not mentioned here.  Having found no reason for reversal, we affirm.

A true copy.

Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-16-