**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Anthony ESPINOZA, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jose de Jesus OROPEZA-BRIONES, Defendant-Appellant.**

**Nos. 77–3410 and 77–3421.**

United States Court of Appeals, Ninth Circuit.

May 1, 1978.

Rehearing and Rehearing En Banc Denied July 12, 1978.

---

Richard M. Grossberg, Kenneth R. McMullan, San Diego, Cal., for defendant-appellant.

Daniel K. Green, Asst. U. S. Atty., on the brief, Michael H. Walsh, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before ELY, TRASK, and ANDERSON, Circuit Judges.

PER CURIAM:

Anthony Espinoza and Jose de Jesus Oropeza-Briones (Oropeza), appeal from a judgment of conviction of the offenses of conspiracy to smuggle, transport, conceal, harbor and shield the entry of aliens, in violation of 8 U.S.C. § 1324 and 18 U.S.C. § 371, and of transportation of aliens, in violation of 8 U.S.C. § 1324(a)(2). We affirm.

On August 21, 1977, border patrol agents Cruz and Martel drove to the residence of defendant Oropeza in Vista, California. As they drove up, defendant Espinoza was backing his car out of the driveway. He had with him a passenger, Manuel Fuentes-Diaz (Fuentes). Four other men of Latin appearance walked hurriedly toward the back of the house as the agents pulled behind Espinoza's car.

Agent Cruz determined Fuentes to be an illegal alien and thereupon arrested Espinoza and Fuentes. Oropeza then exited the residence, identified himself as a resident alien and stated that he and Espinoza were good friends. While at Oropeza's residence, the agents observed a reddish, wine-colored pickup on the premises.

During trial, Fuentes testified that he entered the United States the day before his arrest and that he lacked proper documentation. Before leaving Tijuana, he was given a telephone number of a man in Vista, California that could possibly help him obtain a job. Fuentes crossed the border alone and hitchhiked to Vista where he called the telephone number from a gas station. A woman answered, but eventually a man came to the telephone, and Fuentes explained he had obtained the number through a friend and that he wanted a job. The man on the other end said he would go to the gas station to get Fuentes.

Shortly thereafter, Oropeza arrived in a wine-colored pickup. Oropeza asked Fuentes if he was the person who had called, and Fuentes replied that he was. Fuentes got into the truck and told Oropeza that he was looking for work. According to Fuentes no further conversation took place.

Oropeza took Fuentes to Oropeza's residence. Fuentes waited outside for about an hour until Espinoza arrived. Espinoza and Oropeza discussed going to get some beer. Fuentes got into Espinoza's car, and the agents pulled behind them just as they were backing out of the driveway.

Fuentes maintains that he did not tell either defendant that he had come from Mexico and was in the United States illegally. Under cross examination by the prosecutor, however, Fuentes admitted that earlier he had made a sworn declaration to Border Patrol Agents that he had told both Espinoza and Oropeza that he was in the United States illegally.

During the trial of defendants, counsel for the government, out of the presence of the jury, indicated that he intended to introduce testimony from two other border patrol agents concerning an incident that occurred on August 10, 1977, 11 days prior to the arrest of Espinoza and 18 days before the arrest of Oropeza on the charges which are the subject matter of this case. This proposed evidence was objected to by both defense counsel on grounds that it was of no probative value, too prejudicial, and not admissible as a prior similar act. These objections were overruled.

Thereupon, Border Patrol Agent Gray testified to an incident which occurred on August 10, 1977, near Temecula, California at approximately 2:15 a. m. He observed a light blue Ford van drive off Highway 79 into Temecula into a service station. Shortly thereafter, a red pickup pulled next to the van. The lights of both vehicles were turned off. After a few seconds, the pickup proceeded south through Temecula. Gray inspected the van and ascertained it to be empty. He then pursued the pickup truck and stopped it. The driver was Oropeza, and the passenger was Espinoza.

Both were determined to be in the United States legally. They claimed to be on their way to Oceanside, California where they said they lived. Both were permitted to go, but Gray called for a surveillance of the van.

Agent Krupa testified that he had observed the van for approximately three hours when a single male emerged from the brush near the service station and drove the van away. Krupa followed the van which drove to a residence, where a large group of persons ran in a crouched-over position to the van. The van then proceeded north on Interstate 15. Krupa stopped it and determined that it contained 27 illegal aliens piled on top of one another. The driver was also determined to be an illegal alien.

Near the area from which the lone male emerged and drove the van away, Agent Gray discovered fresh footprints of twenty or so people. The area where the footprints were found is used to circumvent the Border Checkpoint on Interstate 15. Gray testified that the shoes of the aliens found in the van were similar in style and characteristics to those that made the footprints.

Criminal charges were brought against Espinoza, but not Oropeza, with regard to this incident. That case was still pending at the time of trial in the instant case.

Both defendants were found guilty on both counts in this case. Espinoza filed a Notice of Appeal on October 13, 1977; Oropeza filed on October 14, 1977. Jurisdiction of this court is based on 28 U.S.C. §§ 1291 and 1294.

Appellants raise four issues on appeal: (1) Did the trial court commit error in admitting into evidence a prior similar act which took place 11 days before the offenses charged? (2) Was the stop of Oropeza's truck in the prior similar act based on founded suspicion? (3) Was appellant Oropeza denied the right of confrontation when the court ruled he could not call appellant Espinoza during their joint trial as a witness to the prior similar act? (4) Was the evidence sufficient to establish appellant Espinoza's guilt?

I.

The only issue raised by appellants that merits significant attention is whether the trial court erroneously admitted evidence of the August 10, 1977, incident.

Rule 403 of the Federal Rules of Evidence provides that evidence, though relevant, may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." Appellants claim that on the basis of this rule, the August 10th incident should not have been admitted. The government maintains that the August 10th incident was properly admitted in accordance with Rule 404(b) of the Federal Rules of Evidence, which provides that although other crimes, wrongs, or acts are not admissible to prove character, they may be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

■ Where the prejudicial effect of other acts outweighs their probative value or where such acts are not sufficiently similar, neither prior nor subsequent acts should be admitted. *United States v. Webb*, 466 F.2d 1352 (9th Cir. 1972); *Diaz-Rosendo v. United States*, 364 F.2d 941 (9th Cir. 1966); *Enriquez v. United States*, 314 F.2d 703 (9th Cir. 1963). Conversely, where the probative value of such acts is not outweighed by the danger of unfair prejudice, Rule 404(b) of the Federal Rules of Evidence provides a broad avenue through which many acts of prior and subsequent misconduct of those criminally accused may be admitted into evidence. *United States v. Riggins*, 539 F.2d 682 (9th Cir. 1976); *United States v. Holley*, 493 F.2d 581 (9th Cir. 1974); *United States v. Perez*, 491 F.2d 167 (9th Cir.), *cert. denied*, 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974); *United States v. Castro*, 464 F.2d 336 (9th Cir. 1972); *United States v. Rodriguez*, 459 F.2d 983 (9th Cir. 1972).

In a case similar to this one, in which appellant was charged with four counts of illegal transportation of aliens, this court permitted the government to introduce a prior incident in which appellant had been

detained by police for transporting illegal aliens. *United States v. Holley, supra.* As in the instant case, in *Holley* the central issue in controversy was the knowledge and intent on the part of the defendant.

 Since the admission of prior similar acts is not reversible error absent a showing of an abuse of the trial judge's discretion, *United States v. Riggins*, 539 F.2d 682 (9th Cir. 1976); *United States v. Holley*, 493 F.2d 581 (9th Cir. 1974); *United States v. Rodriguez*, 459 F.2d 983 (9th Cir. 1974), we hold that the admission of the August 10th incident in the instant case was not improper.

## II.

Appellants' contention that the stop of the truck on August 10th was not based on reasonable or founded suspicion is without merit. Brief, informal detention is valid if the totality of circumstances provides the officers reasonable ground for their action in making such stops. *United States v. Holland*, 510 F.2d 453 (9th Cir.), *cert. denied*, 422 U.S. 1010 (1975). A reasonable or founded suspicion is all that is necessary—some basis from which it can be determined that the detention was not arbitrary or harassing. *Wilson v. Porter*, 361 F.2d 412, 415 (9th Cir. 1966). The facts surrounding the stop of the truck on August 10th were clearly sufficient to support a reasonable suspicion and were neither arbitrary nor harassing.

## III.

Because Espinoza was charged in the case dealing with the August 10th incident, and that case had not come to trial, he refused to take the stand in the instant case. Oropeza immediately seized upon this valid Fifth Amendment assertion by Espinoza to claim he was deprived of his right to confront Espinoza.

It is clearly established that a defendant cannot call a codefendant to the stand if the codefendant will merely be invoking his Fifth Amendment right not to testify. *United States v. Vigil*, 561 F.2d 1316 (9th Cir. 1977). Likewise, a witness other than a codefendant cannot be called to testify merely to have him exercise his Fifth Amendment privilege. *United States v. Beye*, 445 F.2d 1037 (9th Cir. 1971).

## IV.

Espinoza's claim that the evidence was insufficient to sustain his conviction on the conspiracy charge is without merit. If the trier of fact could reasonably arrive at its conclusion, the evidence is sufficient. *United States v. Rojas*, 458 F.2d 1355 (9th Cir. 1972). Since the prior similar act—the August 10th incident—is admissible, there is sufficient evidence to prove that an unlawful agreement or understanding existed, and that Espinoza with knowledge of the existence of the unlawful enterprise acted to further it. *United States v. Knight*, 416 F.2d 1181 (9th Cir. 1969).

Accordingly, the judgment of the district court is AFFIRMED.