UNITED STATES of America, Appellee,

v.

Jackie Yvonne GROSS, Appellant.

No. 78–2379.

United States Court of Appeals,
Ninth Circuit.

Aug. 30, 1979.

Robert L. Miller, Miller & Miller, Los Angeles, Cal., David P. Curnow, Amos & Curnow (argued), San Diego, Cal., for appellant.

John J. Robinson, Asst. U. S. Atty. (on the brief), Michael H. Walsh, U. S. Atty., John J. Robinson, Asst. U. S. Atty. (argued), San Diego, Cal., for appellee.

Before HUFSTEDLER and TRASK, Circuit Judges, and McNICHOLS,* District Judge.

PER CURIAM:

Appellant was convicted for assaulting a federal officer in violation of 18 U.S.C. § 111. She complains that (1) the evidence was insufficient to support her conviction; (2) the district court prejudicially erred in admitting, over objection, two prior narcotics convictions to impeach her; (3) *Brady* material was improperly suppressed; and (4) the jury was improperly instructed.

On February 24, 1978, DEA Agent Hu, and a government informant, Bogan, tried to buy cocaine from Warren Gross, appellant's husband. Bogan was given $1,500 Government money with which to purchase the cocaine. Warren Gross and Bogan transacted their business outside Hu's presence. Thereafter, Bogan gave Hu a bag of white powder, which turned out to be either

* Honorable Ray McNichols, Chief Judge, United States District Court, District of Idaho, sitting by designation.

extremely poor cocaine or a substance that was not cocaine. Later on the same day a strip search of Bogan revealed $700 of the Government's money in one of his shoes.

After Bogan's "rip-off," DEA Agents Hu and McKinnon, among other agents, together with Bogan, went to visit Warren Gross, who was staying at the apartment of Norris. Hu, McKinnon, and Bogan reached the apartment about 11:00 p. m. When appellant's husband answered the door, a loud argument ensued. Appellant joined the group. Warren Gross refused the agents' request to go inside the apartment. Thereafter, a shoving match between Warren and McKinnon occurred. Agent Hu turned to help McKinnon, and appellant grabbed Agent Hu by the hair. Waiting agents joined the melee, and eventually appellant, her husband, and the other occupants of the apartment were subdued.

Appellant's defense at trial was that she was justifiably acting in defense of her husband. She claimed that she had heard nothing about any mention of drugs, that she had only heard references to "a package."

I

■ The evidence was sufficient to support her conviction. The jury was not obliged to believe her version of the events. Nevertheless, her defense and her credibility with respect to that defense become important on the Rule 609 and *Brady* issues to which we now turn.

At the time this case was tried, neither the court nor counsel had the benefit of a number of cases, throughout the country, interpreting Rule 609(a) of the Federal Rules of Evidence. We held this case pending the *en banc* determination of *United States v. Cook,* (9th Cir., *en banc,* 1979) [Slip Op'n 2303].

Appellant's prior convictions for narcotics offenses are not technically within the concept of *crimen falsi,* and, therefore, were inadmissible unless the Government bore its burden of proving that the probative value of the prior convictions for impeachment purposes exceeded the prejudicial effect of their admission. (*E. g., United States v. Cook, supra; United States v. Ortega,* 561 F.2d 803 (9th Cir. 1977) (shoplifting); *United States v. Hayes,* 553 F.2d 824 (2d Cir. 1977) (importing cocaine); *United States v. Hastings,* 577 F.2d 38 (8th Cir. 1978) (narcotics).) The Government offered no theory explaining how the probative value of appellant's prior narcotics convictions could outweigh the prejudice. To the extent that this issue was discussed at the time of trial, the argument was presented by defense counsel, who pointed out "as soon as the jury hears that she has been convicted previously of either smuggling or using narcotics—heroin—they are going to just assume, because of that, that she was involved with whatever Warren was supposed to have done, and it is going to unduly prejudice the jury's mind against her because she is only charged with assault, not anything else." The court did not require that any kind of showing be made by the Government in response. The court's explanation in overruling the objection does not suggest that the court was weighing the prejudicial effect against the probative value, for the only purpose for which it could have been admissible, which was impeachment.[1]

When appellant testified, she did not represent herself as a person who had no knowledge of drugs or drug trafficking. Therefore, nothing developed between the time at which the court issued its preliminary ruling and the conclusion of her testimony, that lent any added strength to the probative value of the evidence for impeachment purposes. Under these circumstances, the Government did not carry its burden of proving that the probative value was greater than the prejudicial effect of the evidence.

---

1. The court said, "I will charge the jury that it isn't to be considered in arriving at her guilt or innocence. It only goes to her credibility. It is not evidence of the guilt of the crime. It just goes to the credibility. I will give the usual instruction and I think it will be more advantageous to the jury to understand this than it will be prejudicial to her. If she wishes to take the stand, I am afraid she will have to suffer the consequences . . . . ."

 Of course, we cannot know what factors the jury weighed in deciding the credibility issues against appellant. But we would be entirely unrealistic if we failed to perceive that the very prejudice that defense counsel anticipated occurred when the Government impeached her with her prior narcotics convictions. At least a hint that the jury was thus influenced appears from the jury's acquittal of a third defendant, who lived in the apartment and who asserted a defense of property. The acquittal occurred even though that defendant was involved in an extended brawl with several agents that lasted long after appellant had ceased resisting. We conclude that the erroneous admission of the prior convictions was prejudicial.

## II

Appellant moved for disclosure of "all internal affairs records, files, and reports relating to complaints filed against and discipline imposed upon Agents Raymond J. McKinnon and Ululaulani M. B. Hu for the use of excessive force or other aggressive behavior." The Government thereupon produced certain documents for an *in camera* inspection. The district court determined that the material was not subject to disclosure.

 Evidence favorable to an accused must be disclosed upon request where the evidence is material to guilt or to punishment. (*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).) The standard of materiality varies depending on the nature of the information withheld and the type of request made by a defendant. (*United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Skinner v. Cardwell*, 564 F.2d 1381 (9th Cir. 1977).) If a general request or no request is made, disclosure is required only "if the omitted evidence creates a reasonable doubt that did not otherwise exist." (*United States v. Agurs, supra*, 427 U.S. at 112, 96 S.Ct. at 2402.) If a specific request is made, the standard of materiality is whether the evidence "might have affected the outcome of the trial." (*Id.* at 104, 96 S.Ct. at 2398.)

Appellant's request was unquestionably specific; "[i]t gave the prosecutor notice of exactly what the defendant desired." (*Id.* at 106, 96 S.Ct. at 2399; *United States v. Shelton*, 588 F.2d 1242 (9th Cir. 1978).) Implicit in the district court's decision that the information need not be produced is the court's determination that the disclosure could not have affected the outcome of the trial.

We have concluded that it is unnecessary for us to decide whether the district court correctly determined the materiality of the documents produced by the Government for *in camera* inspection. Although we must reverse for Rule 609 error, Gross will not be retried. She has served her sentence while the case was pending on appeal. For the same reason, it is unnecessary specifically to address any of the remaining questions that she raises.

REVERSED.