**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Mohammad Reza MEHRMANESH,**
**Defendant-Appellant.**

No. 81–1318.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 1982.

Decided Oct. 5, 1982.

See also, 9 Cir., 652 F.2d 766.

Michael L. Piccarreta, Asst. Federal Public Defender, Phoenix, Ariz., for defendant-appellant.

Daniel R. Drake, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before ELY and NORRIS, Circuit Judges, and BURNS,* District Judge.

ELY, Circuit Judge:

Mohammad Mehrmanesh appeals his conviction after jury trial for importing heroin and attempting to possess with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), (b), 846, 952(a), 960(a)(1), (b) and 18 U.S.C. § 2. After careful consideration of the numerous assertions of error presented, we affirm.

* The Honorable James M. Burns, Chief Judge, United States District Court for the District of

## I. BACKGROUND

### A. *Procedural History*

On March 20, 1980 appellant Mohammad Mehrmanesh (hereinafter "Mehrmanesh"), his wife, Patricia, and his brother, Abolfazl, were arrested and charged by complaint with various narcotics offenses. After several pretrial hearings, which resulted in 16 days of excludable delay under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1976 & Supp. III 1979), the Government sought and obtained an order permitting additional time within which to file an indictment. A total of 47 days of excludable delay were involved prior to indictment.

On July 9, 1980 a two-count indictment was filed charging the three with the importation of approximately 8.3 pounds of heroin and the attempt to possess with intent to distribute approximately 8.3 pounds of heroin. 21 U.S.C. §§ 841(a)(1), (b), 846, 952(a), 960(a)(1), (b); 18 U.S.C. § 2. Accordingly, there were 64 nonexcludable days between arrest and indictment.

The defendants moved to dismiss the indictment on July 14, 1980, alleging violation of the Speedy Trial Act for failure to indict within 30 nonexcludable days after arrest. *See* 18 U.S.C. §§ 3161(b), 3162(a)(1), 3163 (1976 & Supp. III 1979). The District Court denied the motion and the defendants immediately appealed to this Court. We dismissed the appeal for lack of an appealable order. *See United States v. Mehrmanesh*, 652 F.2d 766 (9th Cir. 1981).

After a five-day trial before Judge Wesley E. Brown, under a superseding indictment that added the charge of aiding and abetting the listed offenses, the jury acquitted Abolfazl but found Mehrmanesh guilty on both counts. Patricia was acquitted by the court pursuant to a Judgment of Acquittal entered at the close of all the evidence. The court found Mehrmanesh to be a dangerous special drug offender under 21 U.S.C. § 849 and sentenced him on each count to 15 years' imprisonment and a $25,000.00 fine.

Oregon, sitting by designation.

## B. *Factual History*

On March 12, 1980 an Iranian citizen named Ali Pirani entered the United States through the port of entry at Chicago's O'Hare International Airport, following a direct flight from Frankfurt, Germany. Pirani, who had a California driver's license, requested a tourist visa valid for forty-five days. As part of his Customs declaration, Pirani indicated that his United States address would be 8414 East Vista, Scottsdale, Arizona, a home then rented and occupied by Mehrmanesh. U.S. Immigration Inspector Michael Goldstein checked Pirani's hand-carried luggage and found two air waybills. Goldstein became suspicious since the waybills indicated that personal effects were being shipped. People traveling internationally usually pay weight overage charges and carry their personal effects with them to ensure their safe arrival. Both waybills were shipped from Kuwait with the same Post Office box number and telephone number given as the address of origin; however, the names of the shippers were different. One waybill related to a shipment by Pirani to "Mr. Mehrmanesh" at 6615 North Smoketree, Scottsdale, Arizona, a home owned by Mehrmanesh. The other was a shipment to Dudley Johnson at the East Vista address; this shipment was never located. Goldstein made copies of the waybills, granted Pirani a forty-five day visa, and referred the waybills to U.S. Customs.

The suitcase shipped by Pirani arrived in Chicago on March 13, 1980 and was searched while "in bond" before the suitcase had cleared Customs. Customs Inspector Joann Ronkowski, who had received the waybills, opened the suitcase and, after noticing a slight bump in the suitcase lining, cut into the bump. She found inside the lining a light brown powdery substance that tested positive for opium alkaloids. Ronkowski referred the matter to the Drug Enforcement Administration (DEA) and entrusted the suitcase to Special Agent Valentine who transported the suitcase to Phoenix.

In Phoenix DEA agents took the suitcase to a local luggage shop where the lining and the 8.3 pounds of heroin it concealed were removed and a new lining installed. A small sample of heroin was placed beneath the new lining.

The contract carrier for the suitcase, American Airlines, sent a letter on March 14, 1980 to the Smoketree Lane address, notifying the consignee, Mr. Mehrmanesh, that the suitcase had arrived and could be claimed. At approximately 11:00 a. m. on March 20, 1980, Mehrmanesh's brother, Abolfazl, and adolescent son, Dudley, arrived to claim the suitcase. After about 45 minutes the bag was delivered to Customs inspectors, who, after a cursory inspection, turned the suitcase over to Abolfazl. DEA agents followed Abolfazl, Dudley, the suitcase, and the car containing them out of the airport area as they drove towards Mehrmanesh's residence at 8414 East Vista. The car stopped once en route when Abolfazl appeared to use a pay phone. About this same time Mehrmanesh received a phone call at the East Vista residence and spoke in Farsi to the caller. After the phone call Abolfazl drove on to the East Vista residence and took the suitcase into the house. About five minutes later Kenneth Uran left the East Vista residence and drove away in his Mercedes. Uran was arrested a few blocks from the house for possession of small amounts of heroin and cocaine.

DEA agents, relying on the above facts, plus informant information that Mohammad Mehrmanesh was engaged in the importation and distribution of large quantities of heroin, obtained a search warrant for the East Vista residence. As agents quietly approached the front door of the residence and were about to knock, the door was opened by Dudley Mehrmanesh. The officers entered the house and kicked in the locked bedroom door where Mehrmanesh was located. They immediately located the suitcase, the contents of which had been removed. The heroin sample had not been touched. In searching the master bedroom, the agents found large quantities of various drugs, drug paraphernalia, and certain documents which indicated Mehrmanesh lived

at the East Vista address. The agents also discovered approximately one pound of opium wrapped in gray duct tape in a wall cavity covered by corkboard. After Mehrmanesh was advised of his rights the agents questioned him. He explained that when the suitcase arrived and he opened it he saw a bundle wrapped in gray tape, which he said he knew to be opium. He said he then hid the opium in the wall behind the corkboard. Following the search, Mehrmanesh, his wife, and Abolfazl were arrested and removed. The other people at the residence, including defendant's mother and sister, Zhara, were allowed to remain at the residence.

At trial the drugs, drug paraphernalia, and other items found during the search of the East Vista house, along with the 8.3 pounds of heroin previously removed from the suitcase, were introduced over objections into evidence. Uran, testifying for the Government, stated that he had obtained drugs, usually heroin, cocaine, or opium, from Mehrmanesh at least ten times during the 18-month period preceding the March 20, 1980 arrest. He also testified that after the arrest Mehrmanesh told him that he did know what was in the suitcase, that he was just doing a favor for a friend, and that he felt he was not guilty. Michael Reedy, who began remodeling Mehrmanesh's house on Smoketree Lane, testified that he had used heroin from April to December 1980 at Mehrmanesh's house and that he had negotiated with Mehrmanesh in December 1980 for the purchase of a large quantity of heroin. The court also allowed a DEA agent to testify concerning an incident in 1975 in which Mehrmanesh admitted involvement in smuggling hashish into the United States. Mehrmanesh declined to testify at trial as a result of the court's ruling that his conviction for the 1975 incident could be used as impeachment. After

four days of trial the jury found Mehrmanesh guilty on both counts of the indictment.

## II. DISCUSSION

Mehrmanesh raises six issues on this appeal: (1) whether the District Court erred in refusing to dismiss the indictment for a Speedy Trial Act violation; (2) whether evidence of Mehrmanesh's prior and subsequent crimes and wrongs were properly admitted under Fed.R.Evid. 404(b); (3) whether the District Court erred in ruling that Mehrmanesh's 1975 conviction could be used as impeachment if Mehrmanesh testified; (4) whether items seized at the East Vista residence should have been suppressed as the result of an invalid search warrant; (5) whether the charge of aiding and abetting in the indictment was fatally defective; and (6) whether improper remarks by the prosecutor during closing argument prejudiced Mehrmanesh's right to a fair trial. We dispose of these contentions in order.

### A. Speedy Trial Act Claim

Mehrmanesh contends that the District Court erred in denying his motion to dismiss the indictment based on sanctions provided for violations of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1976 & Supp. III 1979).[1] The court found that the sanctions for arrest-to-indictment delay did not apply to this case since Mehrmanesh was arrested before July 1, 1980, the effective date of the Act's sanctions. See 18 U.S.C. § 3163(c) (Supp. III 1979). There is no dispute that a violation of the Act occurred;[2] the only issue is whether sanctions for the violation apply. Because this case involves an interpretation of the language of the Act, we review the District Court's determination *de novo*. See *United States v. Fielding,* 645 F.2d 719, 721 (9th Cir. 1981).

1. This issue previously was raised, but not decided, in an interlocutory appeal to this Court. See *United States v. Mehrmanesh,* 652 F.2d 766 (9th Cir. 1981).

2. Section 3162(a)(1) provides for the automatic dismissal of a charge in any indictment or information not filed within 30 days from the

date of arrest or service with summons. *See* 18 U.S.C. § 3161(b) (1976). Mehrmanesh contends, and the Government does not disagree, that 64 days of this 111-day period constituted nonexcludable delay. *See* Appellant's Opening Brief at 3, 14.

Section 3163(c) provides that the sanctions set forth in section 3162 for violations of the Act's time limits "shall become effective and apply to all cases commenced by arrest or summons, and all informations or indictments filed, on or after July 1, 1980." 18 U.S.C. § 3163(c) (Supp. III 1979). Mehrmanesh was arrested on March 20, 1980 and indicted on July 9, 1980. Thus, Mehrmanesh argues, since the late indictment was filed after July 1, 1980 the sanction of automatic dismissal for arrest-to-indictment delay is applicable here.[3] *See United States v. Mehrmanesh,* 652 F.2d 766, 774 (9th Cir. 1981) (Fletcher, J., dissenting).

We do not find, however, the words of section 3163(c) as plain and straightforward as Mehrmanesh insists. Although in statutory construction the language of the statute itself ordinarily is regarded as conclusive, *Bread Political Action Committee v. FEC,* 455 U.S. 577, 580–81, 102 S.Ct. 1235, 1237–38, 71 L.Ed.2d 432 (1982), and legislative history should not be used as a guide to the meaning of a statute that is plain and unambiguous on its face, *TVA v. Hill,* 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978), we find the language of section 3163(c) subject to several tenable constructions. *See Mehrmanesh,* 652 F.2d at 770–71. Our duty, therefore, is to embrace the construction that most accurately reflects the intent of Congress, is most consistent with the structure of the Act, and most fully serves the purposes of the statute. *FBI v. Abramson,* —— U.S. ——, ——, ——, 102 S.Ct. 2054, 2060, 2061, 72 L.Ed.2d 376 (1982).

Unfortunately, however, this is a case in which the legislative history as well as the statutory language provides no express answer. *See Abramson,* 102 S.Ct. 2060. Congress amended section 3163(c) in 1979; the section previously had provided that the sanctions would "become effective after the date of expiration of the fourth twelve-calendar-month period following July 1, 1975." 18 U.S.C. § 3163(c) (1976). The committee reports and floor debates reveal that the lawmakers' primary concern in passing this amendment was the deferral of the implementation of sanctions for at least another year.[4] *See, e.g.,* H.R.Rep.No.96–390, 96th Cong., 1st Sess. 1, 4–9, *reprinted in* 1979 U.S.Code Cong. & Ad.News 805, 808–13; 125 Cong.Rec. S8011 (daily ed. June 19, 1979) (statement of Sen. Biden). Nowhere does the legislative history show whether the legislators intended the effect of imposing sanctions on July 1, 1980 under the amendment to be different than, or the same as, the effect of imposing them on July 1, 1979 under the original Act. *See* H.R.Rep.No.96–390 at 8–9, 12, U.S.Code Cong. & Ad.News at 812–13, 816.

Judicial construction of the sanctions as they went into effect temporarily on July 1, 1979[5] was not altogether explicit. Although the courts that addressed the issue seemed to agree that the original language of section 3163(c) did not make the sanctions applicable to cases in which indictments were filed before July 1, 1979, those courts left uncertain the applicability of the sanctions to cases in which only the arrest occurred before July 1, 1979. *See United States v. Addison,* 633 F.2d 861, 861 (10th Cir. 1981); *United States v. Coffman,* 638 F.2d 192, 193 (10th Cir. 1980), *cert. denied,* 451 U.S. 917, 101 S.Ct. 1995, 68 L.Ed.2d 309 (1981) ("sanctions are first effective as to

---

3. Mehrmanesh does not contend that the arrest-to-indictment delay violated his Sixth Amendment speedy trial right or the district's Plan for Prompt Disposition of Criminal Cases. *See United States v. Fielding,* 645 F.2d 719, 721 n.4 (9th Cir. 1981).

4. The Senate bill originally had provided for deferring the sanctions two years until July 1, 1981; the House voted to defer the sanctions only until July 1, 1980. *See* H.R.Rep.No.96–390, 96th Cong., 1st Sess. 8–9, *reprinted in* 1979 U.S.Code Cong. & Ad.News 812–13.

5. The 1979 amendments were not signed into law until August 2, 1979, thus creating a period of slightly more than a month in which the sanctions were in effect under the terms of the original Act. *See* Speedy Trial Act Amendments Act of 1979, Pub.L.No.96–43, 93 Stat. 327, 332 (1979); *Fielding,* 645 F.2d at 721; *United States v. Carreon,* 626 F.2d 528, 532 n.5 (7th Cir. 1980).

cases which are filed on and after July 1, 1979"); *United States v. Carreon,* 626 F.2d 528, 532 n. 5 (7th Cir. 1980) (sanctions applied only to cases "commenced within the critical month [July 1979]"); *United States v. Barboza,* 612 F.2d 999, 1000 (5th Cir. 1980) (sanctions applied only to cases in which indictment or information was filed after July 1, 1979). *See also United States v. Molt,* 631 F.2d 258, 261 (3d Cir. 1980) (per curiam) (noting the "ambiguous" meaning of the original version of section 3163(c)). *Cf. Mehrmanesh,* 652 F.2d at 774 (Fletcher, J., dissenting) (original language made no distinctions among proceedings in various stages).[6]

■ In our view the construction of the amended section 3163(c) advanced by the Government is the only one that gives meaning to all words of the section and accords with the structure and purposes of the Act: Sanctions for an arrest-to-indictment delay apply only when the arrest takes place or the summons is served on or after July 1, 1980; sanctions for an indictment-to-trial delay apply only when the indictment or information is filed on or after July 1, 1980 (and even if the arrest or summons was before July 1, 1980).[7]

In so construing section 3163(c) we are guided by the statutory scheme of the Speedy Trial Act, which recognizes two separate stages, and corresponding time periods, in the criminal trial process. *See* 18 U.S.C. §§ 3161(b), (c), 3162(a), (b), 3163(c). We infer from the language of the section a legislative recognition of this dichotomy. Section 3163(c), more specific than the language of the original section, manifests a legislative intent that sanctions would not apply to every case pending on July 1, 1980 that involved a Speedy Trial Act violation. The amended language represents a judgment that the sanctions would apply in some cases only when the arrest or summons occurred on or after July 1, 1980—*i.e.,* those cases involving an arrest-to-indictment delay.[8]

■ We cannot accept a construction, such as that advanced by Mehrmanesh, that is guided by only a single phrase within the subsection. *See Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). His interpretation renders the language "all cases commenced by arrest or summons" mere surplusage, for there is no reason to consider whether an arrest or summons occurred before July 1, 1980 if all late indictments filed on or after July 1, 1980 are subject to the sanctions. We may not construe a statute so as to make any part of it mere surplusage. *United States v. Marubeni America Corp.,* 611 F.2d 763, 767 (9th Cir. 1980). Finally, it is neither logical nor does it serve the purposes of the Act to allow dismissal of a late indictment (when the arrest occurred before July 1, 1980) but not to allow dismissal of a late trial (when the indictment was filed before July 1, 1980)—the unfortunate result of Mehrmanesh's construction. *See United States v. Budzyna,* 666 F.2d 666, 670 (1st Cir. 1981); *Mehrmanesh,* 652 F.2d at 774–75 (Fletcher, J., dissenting) (conceding that late trials following pre-July 1 indictments are not subject to sanctions).

**6.** Senator Biden interpreted the original language of section 3163(c) in yet another way: sanctions could apply to late indictments when the arrest or summons occurred before July 1, 1979, but only when the indictment was filed *more than 30 days after July 1, 1979*; sanctions could apply to late trials when the indictment was filed before July 1, 1979, but only when the trial began *more than 60 days after July 1, 1979. See* 125 Cong.Rec. S8011 (daily ed. June 19, 1979) (statement of Sen. Biden).

**7.** This construction also is recommended in guidelines prepared by the Judicial Conference of the United States which, although not binding on this Court, we find persuasive. *See*

Committee on the Administration of the Criminal Law, Judicial Conference of the United States, *Guidelines to the Administration of the Speedy Trial Act of 1974 As Amended* 66–67 (December 1979 revision).

**8.** *But cf. United States v. Mack,* 669 F.2d 28, 34 (1st Cir. 1982) (Congress intended to create two classes of cases, those begun by arrest or indictment before July 1, 1980, and those commenced after July 1, 1980, with sanctions to be applied only to the latter group). Even under this interpretation, however, sanctions would not be applicable here.

In our view the construction we have placed on section 3163(c) most accurately reflects the intent of Congress, is most consistent with the structure of the Act, and most fully serves the purposes of the statute. *See Abramson,* 102 S.Ct. at 2061. Since Mehrmanesh was arrested before July 1, 1980, the sanctions for arrest-to-indictment delay do not apply in this case and the District Court correctly denied his motion to dismiss the indictment.

### B. *Other Acts Evidence*

Mehrmanesh next contends that the District Court erred in admitting evidence of his prior and subsequent crimes and wrongs under Federal Rule of Evidence 404(b) and that the cumulative effect of this evidence denied him a fair trial. We find no reversible error in the District Court's admission and the prosecutor's use of the other acts evidence.

Rule 404(b) forbids admission of evidence of a person's other crimes, wrongs, or acts "to prove the character of a person in order to show that he acted in conformity therewith." Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). We have uniformly recognized that the rule is one of inclusion and that other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity. *See United States v. Green,* 648 F.2d 587, 592 (9th Cir. 1981) (per curiam); *United States v. Rocha,* 553 F.2d 615, 616 (9th Cir. 1977) (per curiam); *United States v. Riggins,* 539 F.2d 682, 683 (9th Cir. 1976), *cert. denied,* 429 U.S. 1045, 97 S.Ct. 749, 50 L.Ed.2d 758 (1977).

The Government, however, must carry the burden of showing how the proffered evidence is relevant to one or more issues in the case; specifically, it must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence. *United States v. Hernandez-Miranda,* 601 F.2d 1104, 1108 (9th Cir. 1979). *See* 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 404[08], at 404–49 (1981). Once its relevancy is shown, the evidence is admissible only after the Government demonstrates to the trial court that, on balance, its probative value is not substantially outweighed by the danger of unfair prejudice to the defendant. Fed.R.Evid. 403. *See Hernandez-Miranda,* 601 F.2d at 1108; *United States v. Sangrey,* 586 F.2d 1312, 1314 (9th Cir. 1978); *United States v. Espinoza,* 578 F.2d 224, 227 (9th Cir.) (per curiam), *cert. denied,* 439 U.S. 849, 99 S.Ct. 151, 58 L.Ed.2d 151 (1978). Although we require more of the trial court than a "mechanical recitation" of the factors of probative value and prejudice, *see Sangrey,* 586 F.2d at 1315, the balance struck is a matter within the court's discretion and will not be disturbed absent an abuse of that discretion. *Green,* 648 F.2d at 592; *Sangrey,* 586 F.2d at 1315; *Espinoza,* 578 F.2d at 228; *United States v. Hearst,* 563 F.2d 1331, 1337 (9th Cir. 1977) (per curiam), *petition for reh'g en banc denied,* 573 F.2d 579 (9th Cir. 1978), *cert. denied,* 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978).

We now apply these settled principles to the four categories of other acts evidence admitted against Mehrmanesh: (1) evidence of hashish smuggling, for which he was convicted, in 1975; (2) evidence of his use of narcotics; (3) evidence of his prior and subsequent sales of narcotics; and (4) evidence of his possession of narcotics at the time of arrest.

### 1. *The 1975 hashish smuggling incident*

The Government sought, successfully, to introduce evidence that in June 1975 Mehrmanesh possessed packets of hashish that had been smuggled into the United States, for which Mehrmanesh pleaded guilty to a charge of smuggling under 18 U.S.C. § 545.[9] Although the

---

**9.** In a pretrial ruling the court held admissible the facts of the incident but ruled that the fact of conviction could not be used in the Government's case-in-chief. *See* Reporter's Transcript [R.T.] at 711 12.

Government consistently has maintained that such evidence is relevant to motive, opportunity, intent, preparation, plan, knowledge, and absence of mistake or accident, nowhere has it specifically established which facts such evidence is relevant to show, nor has it articulated the hypotheses by which the jury could infer such facts from the proffered evidence. *See, e.g., Hernandez-Miranda,* 601 F.2d at 1108.

Nevertheless, prior cases in this Circuit compel us to conclude that there is at least some logical connection, however weak, to a central element of this case: whether Mehrmanesh knew that the suitcase from Kuwait contained heroin. In *United States v. Sinn,* 622 F.2d 415 (9th Cir.), *cert. denied,* 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980), we held that the defendant's possession of cocaine five years previously had some bearing on his defense to a charge of importing and possessing cocaine with intent to distribute. Noting that the only defense was the defendant's claimed ignorance of the cocaine found in his camera case, we concluded that "where, as here, the sole question is one of intent, we think it within the discretion of the trial court to decide that a previous dealing is relevant on the issue of the knowledge of the participant in a second event . . . ." 622 F.2d at 416. Similarly, in *United States v. Sigal,* 572 F.2d 1320 (9th Cir. 1978), we held that evidence of the defendant's prior charge of importing and conviction for possessing a controlled substance was "highly probative" of his knowledge and intent when his defense centered on lack of knowledge and innocent proximity to the wrongdoers. 572 F.2d at 1323.

*United States v. Hernandez-Miranda,* 601 F.2d 1104 (9th Cir. 1979), upon which Mehrmanesh heavily relies, does not require a different conclusion. We noted in *Hernandez-Miranda* that the greater the similarity of the prior act to the present offense, the less tenuous the logical inference that may be drawn from the prior act regarding knowledge or intent. 601 F.2d at 1108–09. We cannot say that the logical inference—that because Mehrmanesh once knowingly possessed illegal narcotics in packages smuggled into the United States he must have known that the suitcase from Kuwait contained narcotics—is completely lacking in this case.

■ The record shows that Judge Muecke, in pretrial proceedings, undertook a careful and considered balancing of the probative value of the 1975 incident and the potential for unfair prejudice to the defendant. *See* Reporter's Transcript [R.T.] at 701–12. At trial Judge Brown gave careful limiting instructions to the jury to minimize the prejudicial impact to the defendant. *See* R.T. at 1200, 1861. On this record we cannot say that the court abused its discretion in admitting evidence of the 1975 incident. *See Sangrey,* 586 F.2d at 1315; *Sigal,* 572 F.2d at 1323.[10]

### 2. *Use of narcotics*

■ Although in pretrial rulings the court held inadmissible drug use paraphernalia seized at Mehrmanesh's residence, *see* R.T. at 704, 707–09, at trial Judge Brown admitted over objections testimony concerning Mehrmanesh's use of cocaine, *see* R.T. at 1525–27, 1547. On appeal the Government contends generally that this testimony is relevant to show intent, knowledge, motive, opportunity, and absence of mistake or accident. *See* Brief of Appellee at 22. Again, however, it has not, before this Court or the trial court, articulated precisely the hypothesis by which one or more consequential facts can be inferred from this evidence.

Our decision in *United States v. Masters,* 450 F.2d 866 (9th Cir. 1971), *cert. denied,*

---

10. In view of our conclusion, the fact of Mehrmanesh's conviction for the 1975 incident was admissible as well under Rule 404(b). *See Sigal,* 572 F.2d at 1323. Any error in the trial court's ruling that the conviction was admissi-

ble for impeachment purposes under Fed.R. Evid. 609(a)(2) was, therefore, harmless. *See* part II(C) *infra. See generally* 3 J. Weinstein & M. Berger, *supra,* ¶ 609[02], at 609–56.

405 U.S. 1044, 92 S.Ct. 1329, 31 L.Ed.2d 587 (1972), precludes a determination that evidence of Mehrmanesh's prior drug use can logically relate to an issue in this drug importation case other than his general criminal propensity. Although the Government apparently argued that the jury could infer that since Mehrmanesh used drugs he was likely to participate in their importation, *see* R.T. at 1847,[11] this is precisely the inference we condemned as "improbable" in *Masters.* 450 F.2d at 867.

Because the error in admission of this evidence amounted only to a violation of an evidentiary rule, *see United States v. Valle-Valdez,* 554 F.2d 911, 916 (9th Cir. 1977), we consider whether the error affected "substantial rights." Fed.R.Crim.P. 52(a). Under this standard we may affirm if, after consideration of the record, we find that the admission of this evidence was more probably than not harmless. *United States v. Castillo,* 615 F.2d 878, 883 (9th Cir. 1980).

On our review of the entire record, we find that the amount of evidence of cocaine use was relatively small, *see* R.T. at 1525–27, 1547; the prosecution made only two brief references to Mehrmanesh's drug use at closing argument, *see* R.T. at 1819, 1847; the jury was cautioned carefully by both the court and the prosecution about the limited inferences they could draw from such testimony, *see* R.T. at 1822, 1834, 1849, 1861–62;[12] and, most importantly, the direct and circumstantial evidence against Mehrmanesh was quite strong, if not overwhelming. *See Hernandez-Miranda,* 601 F.2d at 1109; *Masters,* 450 F.2d at 868. The error in admission of this evidence was more probably than not harmless.

3. *Possession and sale of narcotics*

 Finally, Mehrmanesh contends that the admission of (1) large quantities of other drugs seized at his home when he was arrested and (2) testimony regarding his numerous sales of heroin and cocaine before and after the arrest was error that denied him of a fair trial.

We have consistently held that evidence of a defendant's prior possession or sale of narcotics is relevant under Rule 404(b) to issues of intent, knowledge, motive, opportunity, and absence of mistake or accident in prosecutions for possession of, importation of, and intent to distribute narcotics. *See Sinn,* 622 F.2d at 416; *United States v. Young,* 573 F.2d 1137 (9th Cir. 1978); *United States v. Brown,* 562 F.2d 1144 (9th Cir. 1977); *United States v. Rocha,* 553 F.2d 615 (9th Cir. 1977); *United States v. Marshall,* 526 F.2d 1349 (9th Cir. 1976), *cert. denied,* 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 376 (1976). In this case, in which Mehrmanesh was charged with attempt to possess with intent to distribute, the jury properly could draw the inference that, because Mehrmanesh possessed large quantities of drugs in his home and continued to sell heroin and cocaine before and after his arrest, he intended something more than the mere personal use of the heroin at issue in this case.

Mehrmanesh's reliance on *United States v. Powell,* 587 F.2d 443 (9th Cir. 1978), is misplaced. In *Powell* intent was not at issue because the defendant had denied any participation in the crime. 587 F.2d at 448. In this case, however, in which Mehrmanesh denied knowing the contents of a suitcase that he possessed and had helped acquire, intent was the major issue. *See Sinn,* 622 F.2d at 416.

Further, as we noted above, both the trial court and counsel carefully cautioned the jury throughout the trial as to the proper use of this other acts evidence. *See* R.T. at 1374–75, 1822, 1849, 1861–62. The record shows that the court in pretrial proceedings carefully balanced the potential for prejudice and the probative value of the drugs seized. *See* R.T. at 701–02. On this record

---

11. The prosecutor explained to the jury in closing argument that "because Mohammad Mehrmanesh uses drugs he has a motive to get the drugs into the country so he can use them." *See* R.T. at 1847.

12. At one point in closing argument the prosecutor cautioned the jury to "[u]se that information [about defendant's other acts] to show you what was going on in their heads on March 20th and a few days prior to March 20, 1980." R.T. at 1849.

we cannot say the trial court abused its discretion in admitting evidence of Mehrmanesh's possession and sales of narcotics.

### C. Evidence of Prior Conviction as Impeachment

Mehrmanesh contends that the District Court erroneously held the 1975 hashish conviction admissible for impeachment purposes under Fed.R.Evid. 609, thus preventing him from testifying and denying him a fair trial. *See United States v. Cook,* 608 F.2d 1175 (9th Cir. 1979) (en banc), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980). Although we conclude the court committed error in this regard, in light of our Rule 404(b) discussion we find the error harmless. *See* note 10 *supra.*

The Government argues that Mehrmanesh's 1975 smuggling conviction was automatically admissible under Fed.R. Evid. 609(a)(2) as a crime that "involved dishonesty or false statement." We have recognized that Congress intended to limit Rule 609(a)(2) to those crimes that involve some element of misrepresentation or other "indicium of a propensity to lie and excluding those crimes which, bad though they are, do not carry with them a tinge of falsification." *United States v. Ortega,* 561 F.2d 803, 806 (9th Cir. 1977). Thus, the mere fact that a conviction may have some bearing on credibility does not make it admissible under Rule 609(a)(2). *United States v. Glenn,* 667 F.2d 1269, 1273 n.1 (9th Cir. 1982).

We conclude that Mehrmanesh's prior conviction for smuggling or clandestinely introducing into the United States merchandise (hashish) in violation of 18 U.S.C. § 545 does not fall within the scope of Rule 609(a)(2). One is guilty of smuggling under 18 U.S.C. § 545 when he or she employs any method of introducing goods into this country surreptitiously with the intent to avoid and defeat United States customs laws. *See United States v. Kurfess,* 426 F.2d 1017, 1019 (7th Cir.), *cert. denied,* 400 U.S. 830, 91 S.Ct. 60, 27 L.Ed.2d 60 (1970); *United States v. Boggus,* 411 F.2d 110, 113 (9th Cir.), *cert. denied,* 396 U.S. 919, 90 S.Ct. 245, 24 L.Ed.2d 198 (1969); *United States v. Claybourn,* 180 F.Supp. 448, 451 (S.D.Cal.1960). Convictions for such surreptitious activity, not necessarily involving misrepresentations or falsification, do not bear *directly* on the likelihood that the defendant will testify truthfully. *See Glenn,* 667 at 1273.

The Government, moreover, did not present any facts demonstrating that this particular conviction actually involved fraud or deceit, such as false statements on customs forms. *See Glenn,* 667 F.2d at 1273; *United States v. Hayes,* 553 F.2d 824, 827–28 (2d Cir.), *cert. denied,* 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977).[13] The only documents before the District Court were the information which merely tracked the language of the statute, and the order of probation entered upon Mehrmanesh's guilty plea. With nothing more than the bare fact of conviction, the Government has failed to carry its burden of justifying the admission of Mehrmanesh's conviction under Rule 609(a)(2).[14] *See Glenn,* 667 F.2d at 1273; *Hayes,* 553 F.2d at 828.

Evidence of Mehrmanesh's prior conviction was admissible to attack his credibility, therefore, only if the District Court determined that the probative value of admitting the conviction outweighed its prejudicial ef-

---

**13.** Many Circuits, including the Ninth, have recognized that when a prior conviction by its definition is neither clearly covered nor clearly excluded by Rule 609(a)(2), the prosecution may invoke the automatic admissibility provision by demonstrating that a particular prior conviction rested on facts warranting the dishonesty or false statement description. *See Glenn,* 667 F.2d at 1273; *United States v. Whitman,* 665 F.2d 313, 320 (10th Cir. 1981); *United States v. Dorsey,* 591 F.2d 922, 935 (D.C.Cir. 1978); *United States v. Papia,* 560 F.2d 827, 847 (7th Cir. 1977); *Hayes,* 553 F.2d at 827–28;

*United States v. Smith,* 551 F.2d 348, 364 n.28 (D.C.Cir.1976).

**14.** This holding is consistent with our conclusions in previous cases that "prior narcotics convictions" (not specified in the opinions) were not within the scope of Rule 609(a)(2). *See United States v. Tercero,* 640 F.2d 190, 195, 196 (9th Cir. 1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981); *United States v. Gross,* 603 F.2d 757, 758 (9th Cir. 1979) (per curiam).

fect to the defendant. Fed.R.Evid. 609(a)(1). *See United States v. Field,* 625 F.2d 862, 871–72 (9th Cir. 1980); *United States v. Hendershot,* 614 F.2d 648, 652–53 (9th Cir. 1980); *United States v. Cook,* 608 F.2d 1175, 1185 (9th Cir. 1979) (en banc), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980).

It is evident from the transcript, however, that the District Court failed to undertake a balancing of the probative value and prejudicial effect as required by Rule 609(a)(1). The pertinent colloquy between defense counsel and the court [15] reveals no consideration of the factors that bear on the probative value of the conviction to the defendant's credibility—*e.g.,* the age of the prior conviction and to what degree it reflected on veracity—or on the prejudicial effect of the conviction to a fair determination of the defendant's case—*e.g.,* the similarity of the prior conviction to the current charge. *See Field,* 625 F.2d at 871–72; *United States v. Hayes,* 553 F.2d 824, 828 (2d Cir.), *cert. denied,* 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977).

■ Although the abuse of discretion standard is applied to review a District Court's probative value/prejudicial effect determination under Rule 609(a)(1), *see Field,* 625 F.2d at 871, the standard does not apply when the court fails to make any inquiry into the relevant Rule 609(a)(1) considerations and strike a considered balance. *See Hendershot,* 614 F.2d at 653; *United States v. Crawford,* 613 F.2d at 1045, 1050

(D.C.Cir.1979); *Cook,* 608 F.2d at 1195 (Hufstedler & Ely, JJ., dissenting); *United States v. Smith,* 551 F.2d 348, 357 (D.C.Cir. 1976). The District Court's failure to do so in this case was error. However, in light of our conclusion that the 1975 conviction was admissible as a prior crime under Rule 404(b), *see* note 10 *supra,* the error in this case was harmless.

### D. *Other Contentions*

■ Mehrmanesh's other contentions merit only brief discussion. First, the warrant that authorized the search of Mehrmanesh's house was supported by a sufficient affidavit and was not impermissibly overbroad. We find no error in the magistrate's conclusion that the affidavit established probable cause to believe that Mehrmanesh's house would contain, besides the incriminating suitcase, "a scale, cutting agent[,] narcotics packaging equipment, passports and other documents relating to travel and shipping, and any indicia of ownership and control of the premises." Opening Brief of Appellant at 29 n.8 (quoting the Warrant Language). Considering "the type of crime [here the importation of 8.3 pounds of heroin in a suitcase from Kuwait], the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide [incriminating] property," *United States v. Spearman,* 532 F.2d 132, 133 (9th Cir. 1976), the agent's affidavit enabled the magistrate to conclude that it would be reasonable to

**15.** MR. PICCARRETA [for the defendant]: I only wanted—not in regard to what we just talked about—Mr. Storrs earlier in the court ruled if any defendants testified, all the 404(b) materials they would be allowed to cross-examine on. Presumably the Court's order includes if Mr. Mehrmanesh testified he could be impeached by his 1975 smuggling conviction, if that is included in the order, and the only thing I would—
THE COURT: (Interposing.) Well, his course of conduct, including the 1975 deal, that goes back enough, yes. You are not going to hide that from somebody who is in the business. Sure, it could be used.
MR. PICCARRETA: I am not going to reargue, but I am required by law to just say that he is not going to testify under those rulings. If he would testify he would just testify as to

the March 20th transaction that he had no knowledge that the suitcase contained heroin. Ali Pirani shipped the suitcase. He picked it up as a favor.
Some of that evidence came in through Mr. Uran but I am required by law to make a proffer to the Court in relationship to the suitcase. It would be that he had no knowledge of the contents.
THE COURT: Fine. That is fine. It goes back to what I am saying. They want to come on and only testify as to what they want to testify. They don't want to have anything brought up that would tend to show motive or experience or knowledge of how to do it for which they were admitted to do it. They want all of those things kept out. I don't think they can be kept out.
R.T. at 1746–47.

seek this evidence in the place indicated by the affidavit.[16] *United States v. Hendershot,* 614 F.2d 648, 654 (9th Cir. 1980). *See United States v. Moreno,* 569 F.2d 1049, 1052 (9th Cir.), *cert. denied,* 435 U.S. 972, 98 S.Ct. 1615, 56 L.Ed.2d 64 (1978); *Spearman,* 532 F.2d at 133; *United States v. Honore,* 450 F.2d 31, 33 (9th Cir. 1971), *cert. denied,* 404 U.S. 1048, 92 S.Ct. 728, 30 L.Ed.2d 740 (1972). *Cf. United States v. Rettig,* 589 F.2d 418, 422, 423 (9th Cir. 1978) (nearly identical affidavit and warrant characterized in dicta as establishing probable cause and not an impermissible general warrant).

[redacted] Mehrmanesh's contention that the indictment was fatally defective because it did not name the principal whom he was charged with aiding and abetting also is without merit. Although the failure of an indictment to detail each element of the charged offense generally constitutes a fatal defect, *United States v. King,* 587 F.2d 956, 963 (9th Cir. 1978), our decisions establish that identification of the principal is not an essential element of a conviction for aiding and abetting. *See United States v. Chenaur,* 552 F.2d 294, 300 (9th Cir. 1977); *Feldstein v. United States,* 429 F.2d 1092, 1095 (9th Cir.), *cert. denied,* 400 U.S. 920, 91 S.Ct. 174, 27 L.Ed.2d 159 (1970).

[redacted] Finally, we reject the claim that the prosecutor made improper remarks in closing argument that caused incurable prejudice to Mehrmanesh. The record does not support the contention that the prosecutor commented improperly on the Rule 404(b) prior acts evidence. *See* Part II(B) *supra.* Although the prosecutor's remark concerning the absence of certain explanations by Mehrmanesh after his arrest was improper under *Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976), we find the error cured by the District Court's order to strike the comment and careful cautionary instruction to the jury. *See* R.T. at 1851, 1855–56; *United States v. Shelton,* 588 F.2d 1242, 1247 (9th Cir. 1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2822, 61 L.Ed.2d 275 (1979); *United States v. Wycoff,* 545 F.2d 679, 682 (9th Cir. 1976), *cert. denied,* 429 U.S. 1105, 97 S.Ct. 1135, 51 L.Ed.2d 556 (1977).

The judgment of conviction is

AFFIRMED.

[redacted]

16. The DEA agent stated in the affidavit that

[i]t has been my experience, and the experience of other Special Agents of the DEA, that where narcotics traffickers are "cutting" or diluting controlled substances, they will frequently have a scale to weigh the narcotics and the diluents [sic] to insure the proper mixture. They will also have with them "cutting" agents to dilute the narcotics thereby increasing the volume the narcotics while decreasing the purity. Once the narcotics have been "cut," they are frequently then placed in the narcotics packaging materials or equipment which the narcotics traffickers will keep on hand. It has also been my experience and the experience of other DEA agents that individuals or aliens lawfully travelling in this country will often possess and carry with them passports, visas, and other documents necessary for their lawful travel in the United States. Individuals who are shipping materials will often carry with them shipping invoices, receipts or other documents relating to the items being shipped. Additionally, it has been my experience and the experience of other DEA agents in searching residences and apartments that the persons occupying or controlling the premises will keep with them indicia of ownership and control of the premises such as phone records, rent receipts, and other miscellaneous records.

Opening Brief of Appellant at 29 n.8 (quoting the affidavit).