956 F.2d 1169
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kevin D. WESTWOOD, Defendant-Appellant.
 No. 91-30046.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 6, 1992.
Decided March 9, 1992.
 
 Before EUGENE A. WRIGHT, WILLIAM A. NORRIS and CYNTHIA HOLCOMB HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Kevin Westwood appeals his conviction on one count of attempting to possess with intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This court has jurisdiction over Westwood's timely filed appeal under 28 U.S.C. § 1291. We affirm.
 
 
 3
 * This court reviews the admission of other act evidence under Fed.R.Evid. 404(b) for abuse of discretion. United States v. Miller, 874 F.2d 1255, 1268 (9th Cir.1989). The same standard applies to the district court's balancing of probative value against prejudicial harm, United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir.1982), and to the court's regulation of cross-examination. United States v. Jackson, 882 F.2d 1444, 1446 (9th Cir.1989).
 
 II
 
 4
 The trial court allowed the government to present evidence regarding a transaction in which Westwood allegedly purchased six ounces of cocaine from Tammy Widger. The court admitted the evidence under Rule 404(b) to prove Westwood's intent to purchase two kilograms of cocaine from Detective McPherson. There is some dispute between the parties as to which evidence of the six-ounce deal is in contention. We recognize that the issue presented is the admissibility of Westwood's admission to Perry Harris that the six-ounce deal had been consummated.
 
 
 5
 In Huddleston v. United States, 485 U.S. 681 (1988), the Supreme Court considered the prerequisites for admitting evidence of other acts under Rule 404(b). The Court first noted that the "threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." Id. at 686. Then, rejecting Huddleston's argument that the trial court must find by a preponderance of the evidence that the defendant committed the act before it admits evidence of the act, the Court held that evidence is relevant under Rule 404(b) "only if the jury can reasonably conclude that the act occurred and that defendant was the actor." Id. at 689.*
 
 
 6
 Westwood concedes that evidence that the six-ounce transaction was completed was probative of a material issue in the case--whether or not he intended to complete the two-kilogram transaction. But he argues that the proof that the transaction took place was insufficient to render the transaction admissible under 404(b). Both Harris and Detective McPherson admitted that they had no personal knowledge that the transaction took place. Westwood, on the other hand testified that the transaction did not take place. The only evidence that the transaction did take place was Harris's testimony that Westwood told him the six-ounce deal had been completed. Westwood denied that he ever made this admission.
 
 
 7
 The government's evidence that the six-ounce transaction took place is hardly overwhelming. Nonetheless, a reasonable jury could find that the transaction occurred. Harris's testimony alone might not be enough to convince a reasonable jury. But when that testimony is viewed in the light of the other evidence, such a conclusion would be reasonable. Whatever Westwood's ultimate intentions with respect to the two-kilogram deal, it seems unlikely that he would have called upon Harris to set up that deal had the six-ounce transaction not been completed. If Westwood really did intend to purchase drugs, it is highly unlikely that he would have turned to Harris if Harris had failed him before. Nor would he have done so even if, as he claims, he never intended to purchase the kilograms and was using the six-ounce transaction to dupe the Canadian drug dealers into giving him more money to make larger purchases. Those dealers would have been unlikely to provide cash for those purchases if the test run had failed. To be sure, there are alternative scenarios one could imagine in which Westwood would have contacted Harris even if the six-ounce deal had never gone through. But a reasonable jury could conclude that the only likely explanation for these events is that the six-ounce transaction was consummated.
 
 III
 
 8
 Westwood also argues that "[u]nsubstantiated claims of other misconduct are highly prejudicial, suggesting criminal propensity of the accused.... Where the evidence of the extrinsic act is weak, the probative value of such evidence is severely outweighed by the prejudice of alleged other misconduct."
 
 
 9
 In Huddleston, the Court indicated that "the strength of the evidence establishing the similar act is one of the factors the court may consider when conducting the Rule 403 balancing." 485 U.S. at 689 n. 6. Though the evidence of the six-ounce transaction was slim, it cannot be said that the trial court abused its discretion by finding that the probative value of the evidence was outweighed by the prejudice it would cause. Given Westwood's defense, the probative value of the evidence was significant because it was the most persuasive evidence regarding Westwood's intent. Furthermore, it seems unlikely that the uncorroborated testimony of a government snitch that Westwood admitted to purchasing six ounces of cocaine would prejudice a jury who listened to sixteen recorded conversations in which Westwood negotiated to purchase two kilos of that drug.
 
 IV
 
 10
 Finally, Westwood argues that the district court abused its discretion by "limiting" cross examination of Detective McPherson "concerning the truth or probability of the asserted extrinsic evidence." Westwood complains that the government introduced evidence of the transaction and then made relevancy objections, which were sustained, to counsel's questions directed towards establishing that the transaction did not occur.
 
 
 11
 A trial court may impose reasonable limits on cross-examination. United States v. Jackson, 882 F.2d 1444, 1446 (9th Cir.1989). It may exclude cross-examination that is repetitive. Evans v. Lewis, 855 F.2d 631, 634 (9th Cir.1991).
 
 
 12
 Though the consummation of the six-ounce transaction was highly relevant to the government's case, a review of defense counsel's cross-examination of Detective McPherson reveals that the limitation of that examination was not an abuse of discretion. Detective McPherson admitted that he had no knowledge that the transaction took place. Counsel's additional questions added little to that admission. Her questions regarding McPherson's failure to arrest Harris or conduct surveilance of Tammy Widger would have elicited little more than a confirmation of McPherson's lack of knowledge. The additional questions appear to have been designed to get McPherson to admit that he thought it unlikely that such a transaction had taken place, and possibly to suggest that he engaged in misconduct. But McPherson's speculation on a matter about which he claimed to have no knowledge is hardly probative, and neither entrapment, nor any other kind of misconduct, was an issue in the case. Thus, defense counsel's questions were at best repetitious and at worst distracting to the jury.
 
 V
 
 13
 For the foregoing reasons, Appellant's conviction is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 *
 Westwood mischaracterizes the Court's holding by suggesting that the Court required that evidence of the act must be such that "the jury could reasonably find by a preponderance of the evidence that the prior act occurred." The Court did not intimate that any particular quantum of proof was necessary